Good afternoon. So our case, United States v. Presley. Mr. Byrd. May it please the court. Your honors, counsels, good afternoon. My name is Mark Byrd and I am the judge in this afternoon's hearing and on this appeal. Mr. Presley received a sentence in his mid-30s of 440 months in the United States Bureau of Prisons. And I'd like to begin my argument this afternoon with the argument that the district court abused its discretion in denying the defendant's supplemental motion for new trial and denying it without a hearing on the Norman Breedlove recantation. The standard of review, according to United States v. Sloan, is abuse of discretion. And what this argument essentially comes down to is the fourth prong of the test articulated in United States v. Metrioni. That is, but for the testimony of Norman Breedlove, which was the recanted testimony, is there a reasonable probability of acquittal but for that testimony? And it's my position that in fact there is a reasonable probability of acquittal had Norman Breedlove not committed perjury in the district court at trial. Initially I had argued this case under the standard of sufficiency of the evidence in Jackson v. Virginia and in looking at whether or not there was a reasonable probability of an acquittal construed in the light most favorable to the government. Could any rational jurors find the essential elements of guilt with proof beyond a reasonable doubt? But when I came across the case of United States v. Gonzalez, and that test that I articulated from Jackson v. Virginia, in fact, is the test in most situations when we're reviewing sufficiency of the evidence. However, in reviewing the Metrioni test and the reasonable probability test, this court in Gonzalez rejected that approach for sufficiency of the evidence in lieu of whether or not the testimony that is under challenge undermines confidence in the outcome of the trial. It's our position, mine and Mr. Presley's, that Mr. Breedlove, in fact, in this case, was the government's star witness. There are two things that I ask your honors to keep in mind when evaluating how overwhelmingly significant Mr. Breedlove's testimony was. The first thing that I would ask you to consider is its significance in the mind of the United States Attorney's Office. Mr. Breedlove was an admitted member of this conspiracy, an admitted sold heroin to a young woman who shortly thereafter overdosed and died. He was facing a sentence of as much as life in prison, and yet the government determined that his testimony, if truthful, should result in a recommended sentence that is sufficient but not greater than necessary to achieve the 3553 goals for him of 10 years. That was in his plea agreement. That is how significant the United States Attorney's Office found Mr. Breedlove's testimony to be. The second thing we'd ask you to look at is the district court's own language in its rejection and denial of the motion for judgment of acquittal, wherein the district court, on the record at 258, indicates Norman Breedlove's testimony, if accepted by the jury, is by itself sufficient to establish a conspiracy and Mr. Presley's role in that conspiracy. In evaluating whether or not there's a reasonable probability that a jury would have acquitted, the jury would have acquitted Mr. Breedlove, I would ask you to consider that if Mr. Breedlove's testimony was of such significance in the mind of Judge Capalla for him to make that statement and to utilize him in the first denial of the motion for judgment of acquittal, an alternative for a new trial, having heard him testify, witness his demeanor, and find him to be that significant, is it not unreasonable to What exactly do you want? Judge, I believe he's entitled to a new trial, and I believe he was... Where does Breedlove fit into that? Breedlove... What will his role be at a new trial? Well, that would depend, Your Honor. Well, what do you want it to be? I would like to... I think it comes down to the Gutman analysis, Your Honor. Oh, come on. Get to the point, would you please? What is it you want Breedlove to do at this trial? I want him to explain why he recanted his testimony, explain his pro se comments to the court that suggested, or at least could be interpreted as suggesting that at the time he testified, the government knew that the factual basis in his plea was false, and that he was not a member of this conspiracy, because Breedlove had huge significance, Judge. He's no longer competent to testify, is he? Correct. He's never... Well, he's not competent to proceed. However, under Rule 601 of evidence in the United States v. Gutman case, that does not inherently render him incompetent as a witness. If he understands the sanctity of his oath and his obligation to tell the truth, he can still testify on matters that are in his personal knowledge. But with Breedlove, he put Presley right in that conspiracy. However, earlier than that, and this corroborates his own recantation of the testimony when he was near Presley in the Ogle County Jail, when he was arrested, he gave a three-hour confession on video where he had an emotional breakdown when he was told that the heroin he had sold Christina Dixon resulted in her death. At that point, he became Mr. Cooperative. He wanted to do everything he could to save himself and to help the government. He identified McDowell as being a member of the conspiracy. He identified Cooper as being a member of the conspiracy. He allowed the detectives to search his cell phone. What is more common than a co-conspirator who, in order to reduce his own punishment, testifies against one of the other conspirators? What is uncountable? And the jury or judge tries to figure out whether the person is telling the truth. It's not uncommon. It happens every day. But unique to this case. What's special here? What's special here, Your Honor, is when Mr. Breedlove was having that emotional breakdown, when his motive was greatest to try to help himself with the government, he indicated he did not know and had not heard of Robert Presley. That dramatically changes at trial when he not only indicates that he was a member of the conspiracy but then throws in a few times that he encountered him in the distribution of heroin in an argument about whether or not a certain amount of heroin had been fronted to him by the conspiracy. That corroborates. But initially, when he said he didn't know Presley, was that because he, Breedlove, was trying to avoid admitting participation in the conspiracy? No, Judge. I would say not because he identified all the other defendants in the case. He indicated that Stephen McDowell was a member of the conspiracy and was the conspiracy's leader. His brother nicknamed Lowell. So is he confessing that he was a member of the conspiracy too? I believe at that point in time, Your Honor, he was more concerned about being charged with murder. I have a question, please. I don't believe he was. Did he confess, did Breedlove confess that he was part of the conspiracy? He confessed. Yes or no? It wasn't the subject of the video. Yes or no? No, because it wasn't the subject of the video. No, okay, thank you. Thank you. All right, I'm sorry. Judge, it wasn't the subject of the video. The video was about the death of this young girl. And at that point, it was presented to him that the best way to help himself was to cooperate, tell him everything he knew about drugs and drug dealers, and that's what he did. It wasn't really a question of are you a member of this conspiracy. Mr. Breedlove maintained as late as his pro se filings with the court that he was not a member of the conspiracy, notwithstanding the fact that he pled guilty to count one that charged him with conspiracy. With respect to denying the hearing that we had requested with respect to Mr. Breedlove, initially the judge had continued this case for 11 months, holding the motion in abeyance to allow an opportunity for the federal government to restore Mr. Breedlove to fitness. After the case had been almost three years old, Mr. Presley was tired of waiting, because in light of Gutman, it's our position that the district court could have proceeded. Judge Capalla concluded that he was proceeding without a hearing because Breedlove was unavailable, but he certainly was available. Even though he was in Butner, North Carolina, he participated in his own cell hearing by virtue of closed circuit television, as did the doctors at United States Medical Center in Butner. There was just no reason given why we could not have proceeded with the hearing. Judge Capalla presumed that the testimony was perjurous. He did for purposes of ruling on the motion. So what more would you gain by having Breedlove there either in person or through video? Further exploration of what he meant when he suggested that he had told the prosecutors that the first plea agreement, second plea agreement, third plea agreement were lies, that he was not a member of any conspiracy. One of the issues that Mr. Presley asked me to raise, and I felt there was just enough evidence in the record to raise it, was whether or not the government had noticed that Mr. Breedlove was going to lie about Robert Presley on the witness stand. It comes from a couple of things that I cited in brief that he included in his pro se pleadings, as well as one of the doctors at Butner's, Dr. Maureen Reardon's comments, that he believed that there was a conspiracy among courtroom personnel to compel him or force him, coerce him to enter into a plea agreement. Obviously, the standard changes dramatically if we have that type of situation. Under United States v. Ogle, you get a new trial if there is any reasonable likelihood that the perjured testimony could have affected the judgment of the jury. And there's no question that Mr. Breedlove's testimony could have affected the judgment of the jury. Plus, there's also double jeopardy implications. So by not having that hearing, we were not able to explore what Breedlove meant in those pro se filings. In examining the other evidence in light of determining whether or not there's a reasonable probability, a lot of the other government evidence in this case was problematic, and I had argued in brief about this being a trial by grand jury testimony. And in that grand jury testimony, numerous of these witnesses were questioned about J.D. and Munchie. Munchie is my client's nickname. J.D. was Jeremy Cooper. J.D. and Munchie sold drugs. J.D. and Munchie sat in a car and sold drugs. We saw J.D. and Munchie mixing heroin. Judge Posner asked me a question a few minutes ago. If I go home and I tell everybody that the court asked me this question, we all know because we're here that it wasn't all three of you acting in unison, but instead it was Judge Posner. And that was the areas with these grand jury witnesses where I was not able to effectively and fully and fairly cross-examine to find out where exactly who did what. We see two other examples in this case of where that happened. One is the testimony of Detra White, who at trial indicated that even though in the grand jury she was asked questions about J.D. and Munchie selling her drugs for a gun, when it came down to it at trial, she was cooperative in cross-examination and she admitted that it was actually J.D. who sold her the drugs, not Robert Presley. Nicholas Riel, the detective that testified immediately before he took the stand, said that there was a controlled buy where J.D. and Munchie sold drugs to Nicholas Riel. However, when Nicholas Riel testified and he was questioned about it, he too was cooperative in cross-examination and didn't feign memory problems. He said that it was J.D. who sold him the drugs. There was another man with him, but he did not get a good look at them. So certainly in that situation, it wasn't J.D. and Robert Presley selling Nicholas Riel the drugs. It's my position that under United States v. DeCaro, I was not given a full and fair opportunity to cross-examine these witnesses and it should go to the weight of your Honor's consideration of whether or not there would be a reasonable probability under United States v. Gonzalez. I'm still having a hard time buying that argument because on cross-examination, you brought out the fact that, you know, there were changes in their testimony that, I mean, you cross-examined them on all that. On some of the issues, your Honor is correct. However, on other issues, they claim complete lack of memory regarding what their grand jury testimony was. Right, but that gave you an opportunity to then argue that they could not be trusted and you did argue that in closing argument, right? But they still get the substantive evidence where it's right on paper and it's the way it's phrased by the prosecutor. Isn't it true, Denia McDowell, that you saw J.D. and Munchie mixing heroin? I get that, but that's something that you argued to the jury, like the jury could see it plainly that here's the grand jury testimony, here's the witness now on cross-examination, can't remember anything. And you, of course, argued, look, how can you believe somebody who at some point, at least this is what was said in the grand jury and now they're before you and they don't remember anything. This is a person who lies that you can't be trusted. You made those arguments or words to that effect. But then you also get countered with the arguments, Your Honor, that in the grand jury, which happened years before, it's fresher in that person's mind and maybe with time they have lost that. But when they sit there and say, I don't know. So what do you want? Now you want us to change the rule that that kind of testimony shouldn't be admissible then. I don't think. You know what I mean? That would be the impact. If you're saying you don't have the right to cross-examine and understandably these things were fresh in time. So then that really is getting to the fundamental reason for the rule. The rule is sound, Your Honor. In United States v. DiCaro, even under 801D1A. But I don't understand what you want then. You don't want to change the rule. You want to change what or do what? It's not changing the rule. It's simply interpreting. What do you want to do? I don't understand. You had your chance. What is it you weren't allowed to do that you wanted to do? To question the witnesses with the grand jury memory problems who in the grand jury said J.D. and Munchie acting as a functioning unit to break it down and get into actually who did what. Whose hand handed the dope over? You weren't permitted to ask those questions? They claim memory problems. Well, what can you do if they claim memory? What do you want to do? You want to have their heads examined? No. I simply want the court to examine it under DiCaro. What does it mean to examine it? So if a witness says he can't remember, what comes next? What do you mean by examine it? Well, Judge, from the perspective of the one who sat in the trial, the memory problems seem contrived. What do you want done about that, seem contrived? A new trial, Judge. So seem contrived so that their grand jury testimony was probably accurate? No, seem contrived that the memory loss was probably inaccurate. You have Frank Freeman, who knew Steve McDowell well, looking around the courtroom going, Who's Steve? Who's Steve? I don't know who Steve is. It was almost ridiculous. Well, if it was almost ridiculous, you could say that to the jury, couldn't you? Absolutely. Did you? Yes. I argued credibility. Well, I didn't agree. But it's a lot better to argue that when we went into effective cross-examination, that J.D. and Munchie became J.D., not Presley. I know. Mere presence. But you're just saying you had a lot of good arguments, which the jury didn't buy. Now, are you saying that he should have been acquitted? Your client should have been acquitted? Under the reasonable probability standard, I believe. Yes or no? Yes. So that's what you're really arguing. He should have been acquitted. Well, not enough evidence to convict. Is that what you're saying? Especially with Breedlove's testimony removed. With his tainted testimony there, my position is it undercuts or undermines confidence in the jury's verdict. Now, did you want to say something? We're running out of time. But did you want to say something about the sentence separate from the issue of guilt? I did, Judge. And I briefed that my position was that the district court clearly erred in both the drug quantity calculation as well as denying the motion for a variance. And in looking at that, I understand and I agree with Ms. Bucci's argument that his status as a career offender drove his sentence. However, that would be more significant under a pre-Booker analysis. Post-Booker, the statute is 20 years to life. And my position is that there was not evidence relied upon by the district court with the sufficient indicia of reliability to ensure its probable accuracy. And that the sentence was way more than what is sufficient but not greater than necessary to meet the societal goals set forth at Section 3553A. So what do you think would have been the maximum reasonable sentence? I believe that something in the 20-year range, 25-year range. That's similar to what Steve McDowell, the leader, who had a prior first-degree murder conviction, who formulated this conspiracy, who was the leader and organizer of it, received. I think it would be a lot closer to what the government felt was sufficient but not greater than necessary for Mr. Breedlove, who sold heroin to a young lady and she died from it soon after she took it. And I think what I would say is sufficient but not greater than necessary was 10 years. Okay. Thank you very much. Thank you, Your Honors. Ms. Bucci? May it please the Court. I'm Assistant United States Attorney Talia Bucci, and I represent the United States on this appeal. The government respectfully requests that the Court affirm the defendant's conviction and sentence in this case. I'd like to start by discussing the defendant's argument regarding the district court's denial of the defendant's supplemental motion for new trial. The district court here is in the best position to view the evidence at trial and, in fact, viewed all the evidence at trial, including Mr. Breedlove's testimony, but all the other evidence, which included testimony from people who resided and were visiting the Longwood Street apartment. It included people who had bought drugs from that apartment. It included the landlord of another apartment from which the defendant sold drugs. It also included significant physical evidence that was found in the defendant's hotel room, including packaging materials, mixing materials to mix heroin and cut heroin. And an AK-47? And, of course, an AK-47 assault rifle. Judge Capallo tried this case a couple of times. Is that right? Judge Capallo, this case was only tried once. Oh, I'm sorry. Okay. Never mind. There have been other proceedings with Breedlove, but this case was tried once. And after evaluating all that evidence, the district court determined that, under the Mitreon standard, even if assuming that Breedlove had committed perjury, the existence of the perjury would not have probably have led to an acquittal had it not been heard by the jury. The district court did not abuse its discretion in making that finding. As the district court noted, the evidence against the defendants was legion, and it overwhelmingly established the defendants' guilt, even without Breedlove's testimony. The district court also did not err in denying the defendants' request for an evidentiary hearing. As Your Honor pointed out, the district court began its analysis by assuming that Breedlove had committed perjury, so there was no hearing needed on that issue, and assumed that Breedlove was not competent at the time of trial, so there was not a hearing needed on that issue. The defendant has argued that a hearing should have been allowed to determine whether the government knowingly put forward perjured testimony. There's absolutely no evidence that the government knowingly put on false testimony. The only evidence that the defendant has even cited is from Breedlove's pro se submissions months later, and as the district court determined, none of those pro se submissions, none of the allegations in them brought into question whether the government had knowingly put on false testimony. How old was he when he was tried? He was born in 1979. I believe that makes him 35. He's 35 now, so it would have been about 30 at the time of the trial. Sorry, 33. Well, his sentence is almost 37 years. That's correct. Well, what's the point of giving someone a sentence that doesn't end until he's 70? In this case, the defendant had significant criminal history. He was found to be a career offender, and Judge Coppola rightfully found that he had no regret. Well, so what? Is it fear that if he was 65 when he was released, he would go back into the drug business? Is it possible? Are there any 65-year-olds in the heroin business? As to that specific question, I'm not sure. Well, if you don't know, why isn't that significant? That is, what is the purpose of sentencing people at an age and a length of sentence that keeps them incarcerated beyond the age at which they would actually pose a danger? Well, the district court found that he would still pose a danger. Well, is that realistic? Are there people in their 60s in the heroin trade? I don't know. You don't know, right? Now, does Judge Coppola know? Judge Coppola has had, I know in one case, one of the witnesses here, Frankie Freeman, he was of an elderly age. I don't know his exact age, but he was of an advanced age. He wasn't merely in his 30s as the defendant was here. And Judge Coppola found that the defendant had no regard for the law and that a lengthy prison sentence was necessary in order to protect the public from him, give him just punishment, as well as a deterrence factor. But did the judge say that this person has to be kept in prison until he's 70 because until then he'll be a menace? He said that a lengthy prison sentence was necessary in this case. Well, that isn't the same thing. Did he give any regard to the age that Presley would be when he was released? Is there anything about that, about his age? He did not specifically cite Presley's age, but he acknowledged that a lengthy sentence was necessary, and he set forth the reasons. Well, how does he know it was necessary? Well, the reasons that he set forth were, one, the fact that this defendant had a history of as soon as he got out of prison on one case, he then within months. That doesn't mean he's going to do that in his 60s. Did the probation service say he should be kept locked up until he was 70? I don't believe the probation service specifically. Did you say it? I'm not sure. I don't believe it's in the record that the government specifically cited the age that he would be when he was released. Did the government recommend a length of sentence? The government recommended that the defendant serve a within-guideline sentence. Well, what is the evidentiary basis for thinking that he would be a danger in his 60s? I believe it's based on the nature of his crime. No, but you have to think about how people change over their life and whether heroin is the kind of trade in which 60-year-olds engage since it's a dangerous business. It is a dangerous business, and here the court found that this defendant had no history of ever having legitimate employment. Yeah, but you're missing the whole point, which is that people change between their 20s and their 60s. Is there any discussion of that? The judge say, you know, I know that there aren't many 60-year-olds in the heroin trade, but this guy is, you know, exceptional, and he's going to do it until he dies at whatever age. The court did not specifically recommend that. Well, where is the evidence that judges ever think about this? In this case, the… The aging problem. The court did not specifically address that in its sentencing. You keep saying specifically as if there were some implicit discussion of age, which there isn't. The court did not address that. The court looked to the defendant's past. What were the prior convictions, and was there a… did he just go from one to the next to the next as soon as he got out? Essentially, he had his first conviction at age 16. He was convicted of manufacturing and delivering controlled substance. He had a home invasion with a firearm arrest, for which he received a sentence of 10 years. He had an aggravated battery conviction. He also had several convictions for soliciting an unlawful business, in which he was found on the streets yelling to cars and passersby, asking them if they wanted weed or other drugs. Were there any shootings implicated with this drug conspiracy that he was linked to? Yes. The shootout that happened on December 1, 2010, the defendant… there are witnesses that put the defendant in that shootout. He also, as Your Honor previously mentioned, he had an AK-47 assault rifle. He had a history. He had an armed home invasion conviction. There was testimony about him having a gun at the shootout? Yes, there was, Your Honor. I believe Donia McDowell testified about that. Rodney Love and Vaughn Johnson all testified that the defendant had a gun. And as Your Honor… And one of the same witnesses, this Donia Johnson, saw him and Cooper with guns before they fled. This was after the shootout, right? Yes, after the shootout. She said she saw them leaving the apartment with guns. And then some shell casings were recovered in Cooper's car, the guy who was with Presley. I believe the shell casings were recovered from the apartment. From the apartment. And then those casings were then linked to a gun that was found in the car that the defendant was in when he was arrested. So he didn't just barely get over the sentencing enhancement aspect of the additional convictions. He had many more than necessary to meet the bill. He had, in total, he had 17 criminal history points, including the convictions that resulted in him qualifying as a career offender. The court also found that the defendant, he would get out of jail on one sentence, and then within four to six months later, he would have another… he would be breaking the law yet again, and then would be back in jail. A 10-year sentence hadn't deterred him, and the court found that a within-guideline sentence was therefore necessary. Unless the court has additional questions for me, I will close by asking that the court affirm the defendant's conviction and sentence. Okay, thank you, Ms. Boucher. So, Mr. Byrd, your time ran out, but if you have anything further, we will listen to you. Just to clarify a couple of points, Dania McDowell testified that in that shootout, Robert Presley had a pistol, not an AK-47. There was an AK-47 found in his room that did not have his fingerprints on it. In fact, on all of the evidence seized in this case, with one exception, that being a bottle of lactose, some type of vitamin or supplement that had one latent print that matched Presley, his fingerprints were not on any of the drugs, any of the baggies, any of the gloves, the scales, the guns, any of it, which I think also goes to the issue of whether or not 36 1⁄2 years was sufficient, but not greater than necessary. Even though Rita and a line of cases say it's presumptively reasonable, when you're talking about the heartland of a man's life being taken away from him, it should still be evaluated with some degree of scrutiny. And with respect to the comparisons to Breedlove and to McDowell, who ran the conspiracy, there's no question that Mr. Presley quantitatively has a worse criminal history. However, he didn't murder anybody like McDowell did. He didn't cause a young woman to die from heroin, overdose for heroin. He sold her. So qualitatively, I don't believe his criminal history is any worse. And for all of these reasons, Your Honor, I'm asking the court to consider vacating Mr. Presley's conviction and remanding it for a new trial, alternatively for a hearing with Mr. Breedlove on the recantation, and alternatively to that, remand with instructions to consider a greater, I mean a sufficient but not greater than necessary sentence, which I believe 36 1⁄2 years in this case on these facts was not. Thank you. Okay. Well, thank you, Mr. Verdin. You were appointed, were you not? Yes, Your Honor. Well, we thank you for your efforts on behalf of the client. We thank Ms. Bucci as well. So we will recess. Thank you.